IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

RHODA ANN MCVEY, et al.,

        Plaintiffs,

v.                    CIVIL ACTION NO. 2:13-cv-01431

BOSTON SCIENTIFIC CORP., et al.,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending is Proxy Biomedical, Ltd.'s ("Proxy Ltd.") Motion to Dismiss Plaintiffs' Complaint [Docket 16]. The plaintiffs responded to the Motion [Docket 25] and Proxy Ltd. replied [Docket 30], making the Motion ripe for decision.[1] Proxy Ltd. seeks an Order dismissing all of plaintiffs' claims against it for lack of personal jurisdiction and for failure to state a claim upon which relief can be granted. This court **FINDS** that there is a lack of personal jurisdiction over Proxy Ltd. and **GRANTS** the Motion to Dismiss Plaintiffs' Complaint as to Proxy Ltd.

**I.**     **Background**

The two plaintiffs in this case, Rhoda Ann McVey and Douglas R. McVey, are Arkansas residents (Compl., [Docket 1], at ¶ 1). The plaintiffs originally filed their Complaint in the United States District Court for the Western District of Arkansas. The case was subsequently transferred to this district by the Judicial Panel on Multidistrict Litigation and assigned to MDL 2326, *In re: Boston Scientific Corp., Pelvic Repair System Products Liability Litigation*. [Docket

---

[1] Proxy Ltd. recently submitted a notice of supplemental authority related to the Biomaterials Access Assurance Act, 21 U.S.C. §§ 1601 *et seq.* [Docket 31].

8]. Mrs. McVey alleges that she suffered personal injuries as a result of a Boston Scientific Corporation ("BSC") Pinnacle Pelvic Floor Repair Kit ("Pinnacle") and a BSC Advantage Fit Transvaginal Mid-Urethral Sling System ("Advantage Fit") that were implanted into her body at Mercy Medical Center in Rogers, Arkansas on July 30, 2008. (Compl., [Docket 1], at ¶¶ 9–10). The implants were used to treat her pelvic organ prolapse and stress urinary incontinence, respectively. (*Id.* at 11).

The plaintiffs allege that all of the defendants in the suit, including Proxy Ltd., designed, manufactured, packaged, labeled, marketed, sold, and distributed the Pinnacle device and the Advantage Fit device, including those that were implanted into Mrs. McVey. (Compl., [Docket 1], at ¶ 9). The plaintiffs allege that all of the defendants have sufficient contacts with Arkansas to allow the transferor court in Arkansas to exercise personal jurisdiction over it under the theories of both general and specific jurisdiction. (Compl., [Docket 1], at ¶ 6).

### a. Proxy Ltd.

Proxy Ltd. is an Irish public limited company, and its principal place of business is in Galway, Ireland. (Compl., [Docket 1], at ¶ 4). Among other types of mesh, Proxy Ltd. manufactures Polyform Synthetic Mesh ("Polyform Mesh"). Polyform Mesh is a non-absorbable synthetic mesh, constructed of knitted filaments of polypropylene. (510(k), [Docket 25-29], at 1). It is supplied in sterile, sheet form to be cut to size and sutured by a surgeon to meet an individual patient's needs. (*Id.*) Polyform Mesh is a *finished* product that is distinct from the Pinnacle and Advantage Fit devices at issue in this suit. (Interrogatories, [Docket 25-23], at 3). Proxy Ltd. also sells "bulk non-sterile polypropylene mesh that has physical properties equivalent to Polyform Mesh as a component for the Pinnacle device" to a contract manufacturer for BSC. (*Id.* at 8). The contract manufacturer places orders with Proxy Ltd. in Ireland based on

information it receives from BSC. (*Id.*) Then, the contract manufacturer incorporates the bulk, non-sterile polypropylene mesh into its Pinnacle device in Jeffersonville, Indiana, and sells the finished product to BSC. (*Id.*) Proxy Ltd. derives no income from the sale of the finished Pinnacle devices. (*Id.* at 9).

Beginning in September 2010, Proxy Ltd. has sold bulk, non-sterile polypropylene mesh, sometimes referred to as Advantage, which is used as a component of the Advantage Fit device (and others) to BSC's contract manufacturer. (Interrogatories, [Docket 16-3], at 10–11); (Aff. of Peter Mulrooney, [Docket 16-2], at ¶ 2). The contract manufacturer incorporates the mesh as a component into Advantage Fit in Jeffersonville, Indiana and sells the finished product to BSC. (*Id.*) Note that Proxy Ltd. began providing Advantage for the Advantage Fit device in 2010, which was after Mrs. McVey's surgery implanting the device in 2008. Thus, the personal jurisdiction inquiry centers on the contacts associated with the Pinnacle device.

### b. Proxy Synthetic Mesh Versus Bulk Mesh

The Executive Director of Proxy Ltd., Peter Gringas, explained the difference between Polyform Mesh and the bulk product:

> Unlike Polyform Mesh, the bulk, non-sterile polypropylene mesh Proxy Ltd. provides for use as a component part in BSC's Pinnacle . . . cannot be sold to an end user or implanted in a human absent additional steps in the manufacturing process. Specifically, before the bulk, nonsterile polypropylene mesh supplied by Proxy Ltd. can be used as a component of Pinnacle, that mesh needs to be further processed after leaving Proxy Ltd.'s control by the addition of sleeves, dilators, leads, sutures, needles, barrier packaging, sterilization, and instructions for use, including indications for use and warnings, and instrumentation are also added.

(Supp. Decl. of Peter Gringas, [Docket 30-2], ¶ 4).

Proxy Ltd. entered into a distribution agreement with BSC in 2005. (Distribution Agreement, [Docket 25-21]). The only product that was the subject of the original distribution

agreement between Proxy Ltd. and BSC was Polyform Mesh. (Supp. Decl. of Peter Gringas, [Docket 30-2], at ¶ 9). The agreement was entered into before Proxy Ltd. had any role in supplying component parts for any BSC product, including Pinnacle and Advantage Fit. (*Id.* at ¶ 10). Subsequent amendments to the agreement have occurred. (Amendment to Distribution Agreement, [Docket 25-22]). The Amendment to the Distribution Agreement cited by the plaintiffs distinguishes between mesh supplied for Polyform, Advantage Mesh, and mesh supplied for Pinnacle. (Amendment to Distribution Agreement, [Docket 25-22]). The distribution agreement provides that BSC "shall use commercially reasonable efforts to launch and market the Product in the Field in the United States and Europe." (Distribution Agreement, [Docket 25-21], at 5).

### c. Proxy Ltd.'s Contacts with Arkansas

Proxy Ltd. is without knowledge as to how many of the Pinnacle devices BSC sold in Arkansas and the amount of revenue BSC derived from sales of the Pinnacle devices in Arkansas. (Interrogatories, [Docket 25-23], at 8–9). From what can be discerned from the record of rather heavily redacted BSC documents, there appear to be a number of Pinnacle devices that were sold in the region including Arkansas from January 2012 through April 2012. (Regional Summary, [Docket 25-24]).

## II. Legal Standard

### a. Choice of Law

Under 28 U.S.C. § 1407, this court has authority to rule on pretrial motions. In multidistrict litigation cases such as this, the choice-of-law for these pretrial motions depends on whether they involve federal or state law. "When analyzing questions of federal law, the transferee court should apply the law of the circuit in which it is located. When considering

questions of state law, however, the transferee court must apply the state law that would have applied to the individual cases had they not been transferred for consolidation." *In re Temporomandibular Joint (TMJ) Implants Prods. Liab. Litig.*, 97 F.3d 1050, 1055 (8th Cir. 1996) (internal citations omitted); *Toll Bros., Inc. v. Dryvit Systems, Inc.*, 432 F.3d 564, 568 n.4 (4th Cir. 2005) (applying Connecticut state law in transferred multidistrict litigation case based on diversity jurisdiction and citing to *In re Temporomandibular Joint Implants Prods. Liab. Litig.*, 97 F.3d at 1055); *Bradley v. United States*, 161 F.3d 777, 782 n.4 (4th Cir. 1998); *see also* 15 Charles A. Wright et al., *Federal Practice and Procedure*, § 3866 (3d ed. 2009).

The Honorable Shira A. Scheindlin has made a similar observation that the law of the transferee circuit applies:

> [C]ourts have held that the law of the transferee circuit controls pretrial issues such as whether the court has subject matter or personal jurisdiction over the action, or whether the cases should be remanded to state court because the cases were not properly removed.

*In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 241 F.R.D. 435, 439 (S.D.N.Y. 2007) (footnote omitted). Judge Scheindlin's observation, as noted in her opinion, reflects the general approach. *See*, *e.g.*, *In re Linerboard Antitrust Litig.*, No. 04 Civ. 4001, MDL 1261, 2005 WL 1625040, at *4 (E.D. Pa. July 11, 2005) (applying the law of the Third Circuit on a motion to dismiss for lack of subject matter jurisdiction); *In re Bridgestone/Firestone, Inc., Tires Prods. Liab. Litig.*, 256 F. Supp. 2d 884, 888 (S.D. Ind. 2003) (applying the law of the Seventh Circuit on a motion for remand to state court). Therefore, for the purposes of this motion, Arkansas' law will apply to the determination of whether Arkansas' long-arm statute confers personal jurisdiction over Proxy Ltd., and the Fourth Circuit's law will apply in determining whether that conferral comports with due process under the United States Constitution.

### b. Personal Jurisdiction

"When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff ultimately bears the burden of proving to the district court judge the existence of jurisdiction over the defendant by a preponderance of the evidence." *New Wellington Fin. Corp. v. Flagship Resort Dev. Corp,* 416 F.3d 290, 294 (4th Cir.2005). When the court addresses the jurisdictional question "on the basis only of motion papers, supporting legal memoranda and the relevant allegations of a complaint, the burden on the plaintiff is simply to make a prima facie showing of a sufficient jurisdictional basis to survive the jurisdictional challenge." *Id.; see also Combs v. Bakker,* 886 F.2d 673, 676 (4th Cir.1989). "Under such circumstances, courts 'must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction.'" *New Wellington,* 416 F.3d at 294 (quoting *Combs,* 886 F.2d at 676).

For a district court to validly assert personal jurisdiction over a non-resident defendant, two conditions must be satisfied. First, a state long-arm statute must authorize jurisdiction over the non-resident defendant. Second, the court's exercise of personal jurisdiction over the non-resident defendant must "comport with the Due Process Clause." *In re Celotex Corp.,* 124 F.3d 619, 627 (4th Cir. 1997); *Mylan Labs., Inc. v. Akzo, N.V.,* 2 F.3d 56, 59–60 (4th Cir. 1993).

"A court's exercise of personal jurisdiction over a non-resident defendant is consistent with the Due Process Clause if the defendant has sufficient 'minimum contacts' with the forum such that requiring the defendant to defend its interests in the forum does not 'offend traditional notions of fair play and substantial justice.'" *Celotex,* 124 F.3d at 628 (quoting *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945)). The Supreme Court has recognized that this protection

provided by the Due Process Clause extends to foreign corporations. *See Goodyear Dunlop Tires Ops., S.A. v. Brown*, 131 S. Ct. 2846, 2852–54 (2011).

There are two approaches to finding jurisdiction over persons outside a state's borders: specific and general jurisdiction. *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.,* 293 F.3d 707, 711 (4th Cir. 2002). If the suit does not arise out of the defendant's contacts with the state, the defendant must have "continuous and systematic" contacts with the state to confer general jurisdiction. *Id.* at 712. On the other hand, if the defendant's contact with the state is the basis of the suit, then specific jurisdiction applies. *Id.* The Fourth Circuit applies a three-part inquiry to determine whether specific jurisdiction exists; the inquiry looks to: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiff's claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *Mitrano v. Hawes*, 377 F.3d 402, 407 (4th Cir. 2004). The "touchstone" of the specific jurisdiction analysis is whether the defendant "engaged in some activity purposefully directed toward the forum state." *Celotex,* 124 F.3d at 628 (internal quotations omitted).

**III.    Analysis**

    **a.  General Jurisdiction**

The plaintiffs allege in their complaint that Proxy Ltd. is subject to general jurisdiction in Arkansas based on Proxy Ltd.'s significant contacts with the state. Proxy Ltd. is based in Ireland, has no offices in Arkansas, and does not advertise or sell Polyform Mesh or any other polypropylene mesh in Arkansas. (Decl. of Peter Gringas, [Docket 16-1]). It does manufacture a component of a medical device that another company sells to parties in Arkansas.

These contacts fall significantly below the level of contacts constitutionally necessary to allow a state to have general jurisdiction over an entity. *See Goodyear Dunlop Tires Ops., S.A. v. Brown*, 131 S. Ct. 2846, 2853–54 (2011) (stating that the paradigm forum for the exercise of general jurisdiction, for a corporation, is "one in which the corporation is fairly regarded as at home") (citing Lea Brilmayer et al., *A General Look at General Jurisdiction*, 66 Texas L. Rev. 721, 728 (1988), which identifies domicile, place of incorporation, and principal place of business as paradigm bases for a state to exercise general jurisdiction).

### b. Specific Jurisdiction

Arkansas' long arm statute provides that "[t]he courts of [Arkansas] shall have personal jurisdiction of all persons, and all causes of action or claims for relief, to the maximum extent permitted by the due process of law clause of the Fourteenth Amendment of the United States Constitution." Ark. Code Ann. § 16-4-101 (West 2013). Thus, the constitutional inquiry is determinative of the issue.

The plaintiffs argue that specific jurisdiction exists based on the following relevant contacts: (1) numerous Pinnacle devices were sold in Arkansas in 2012; and (2) there was a distribution agreement between Proxy Ltd. and BSC within the U.S. and Europe that covered mesh incorporated into the Pinnacle device. Under facts that are substantially the same, I have considered this stream-of-commerce argument for the existence of personal jurisdiction over Proxy Ltd. in Pretrial Order # 41 of MDL case no. 2:12-md-2326. I held that these contacts were insufficient to allow a state to assert personal jurisdiction over Proxy Ltd. under the due process clause. For the reasons stated in Pretrial Order # 41, I **FIND** that an Arkansas court would not have personal jurisdiction over Proxy Ltd. in regard to this suit.

## IV.     Conclusion

For the foregoing reasons, the plaintiffs have not satisfied their burden of proving that an Arkansas court would have personal jurisdiction over Proxy Ltd. in this suit. Therefore, I **GRANT** Proxy Ltd.'s Motion to Dismiss Plaintiffs' Complaint as it pertains to Proxy Ltd.

The Court **DIRECTS** the Clerk to send a copy of the Memorandum Opinion and Order to counsel of record and any unrepresented party.

ENTER:     April 15, 2013

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE